IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:19-cv-00254-RSP |
| HARRISON COUNTY, TEXAS and | § | |
| SHERIFFS' ASSOCIATION OF TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Harrison County's Motion to Dismiss Plaintiff's Second Amended Complaint. **Dkt. No. 48**. Harrison County seeks to have the case against Harrison County dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

Harrison County's Motion challenges the sufficiency of Plaintiff Jane Doe's Second Amended Complaint. *See* Dkt. No. 46. In the Second Amended Complaint, Doe asserts claims against Harrison County asserting liability under 42 U.S.C. § 1983 as well as vicarious liability and various negligence claims.

The Second Amended Complaint regards an incident during a transport from a state jail to the Harrison County Jail by former defendant Roger "Chilly" Valentine ("Valentine") on March 22, 2019, during which Valentine allegedly sexually assaulted Doe while on duty. Dkt. No. 46 at 1–2. The claims against Valentine were severed from this action into a new action on December 17, 2019. Dkt. No. 42.

Doe's pleading asserts as follows: Doe was released from the Linda Woodman State Jail into the custody of Valentine, a lone male transport officer, for an approximately four-and-a-half-hour trip to the Harrison County Jail. Dkt. No. 46 at 2. During the first part of the drive, Valentine

1

made several sexual advances to Doe, and when Doe asked to use the restroom, Valentine stopped at a gas station in Corsicana that he knew to have no surveillance cameras. *Id.* at 3. Valentine followed Doe into the gas station restroom, cornered her into a stall, turned her around and proceeded to rape her while she was still shackled. *Id.* Valentine then removed Doe's handcuffs, left, washed his hands, and handcuffed her again as she exited the restroom and returned her to the vehicle. *Id.* Valentine continued to make sexually abusive and harassing remarks to Doe. *Id.* Valentine arrived at the Harrison County Jail around 2p.m., and Doe was booked. *Id.* When a sergeant arrived, Doe relayed what had occurred and was taken to a nurse's office and subsequently to Christus Mother Francis Hospital. *Id.* at 4.

Valentine was under investigation for at least one other instance of sexual misconduct at previous employer Gregg County at the time he resigned from that job. *Id.* Valentine was hired by Harrison County Sheriff's Office after no further investigation was launched into his misconduct. *Id.*

Doe's Second Amended Complaint alleges, upon information and belief, as follows: the Sheriff's Association of Texas failed to take any action to investigate Defendant Valentine's sexual misconduct, despite their own policies and procedures providing otherwise. *Id.* Defendant Valentine was hired at Harrison County Sheriff's Office by a family member, Velma W. McGlothin ("McGlothin"). *Id.* McGlothin is head of the Human Resources Department and hired Defendant Valentine with knowledge and/or familiarity of the circumstances of Defendant Valentine's prior misconduct and resignation. *Id.*

Valentine's hiring was called into question by other employees of Harrison County, given the widespread knowledge of his background and prior misconduct. *Id.* Defendant Harrison County purposefully concealed the circumstances of Defendant Valentine's hiring from Plaintiff,

including but not limited by concealing the nature of Defendant Valentine's relationship with the head of Human Resources for Harrison County, concealing any references that his family member provided, and concealing any role that this family relationship may have played in Defendant Valentine's hiring, retention, supervision, and ability to abuse inmates such as Plaintiff. *Id.* at 5.

Doe pleads that Harrison County had a policy applicable to the hiring, training, supervision, and/or vetting of its officers, specifically, a policy and procedure requiring all new job applicants, including Defendant Valentine, to undergo a thorough background check. *Id.* Doe asserts that Harrison County ignored the policy and procedure and failed to check Defendant Valentine's background, and/or willfully ignored its own policy through the nepotism of a family member hiring Defendant Valentine, and that upon information and belief, Harrison County violated its own hiring policies and procedures. *Id.*

Doe alleges that had Harrison County followed its own policies and procedures, it would have refused to hire Valentine, who had a past history significant for sexually assaulting and/or harassing behavior, had previously been terminated by other law enforcement departments for inappropriate behavior, and would have discovered that Defendant Valentine did not meet Defendant Harrison County's own hiring criterion for Defendant Valentine's position. *Id.* Doe pleads that such policy specifically excluded making inquiries with prior Sheriffs' offices where officers applying for employment were previously employed. *Id.* at 6. Doe also alleges Harrison County violated numerous other policies and procedures including prohibiting prisoners, such as Doe, from being transported by a sole male officer. *Id.*

## II.     LEGAL STANDARD

### a.  Motion to Dismiss

A party may challenge the court's subject matter jurisdiction by filing a motion to dismiss. Fed. R. Civ. P. 12(b)(1). A court may decide whether it has subject matter jurisdiction based upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012), *quoting Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). When disputed issues of fact are central to both the subject matter jurisdiction issue and the claim on the merits, the court must assume that jurisdiction exists and resolve the challenge as a motion to dismiss for failure to state a claim under Rule 12(b)(6) or on summary judgment under Rule 56. *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Bowlby*, 681 F.3d at 219.

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

**b.  Underlying Fourth Amendment Violation**

A county is liable if it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). If there is no underlying constitutional violation, there is no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

**c.  42 U.S.C. § 1983 Liability**

Section 1983 provides a federal cause of action against those who, under color of state law, deprive a United States citizen of "any rights, privileges, or immunities secured by the Constitution and laws." County liability under § 1983 requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

A single incident of unconstitutional activity will not suffice to hold a municipality liable unless a plaintiff establishes that it was caused by an existing unconstitutional "official policy." *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989). Official policy is either an

officially adopted policy or a widespread practice so common as to constitute a custom that fairly represents municipal policy. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1985). There must be a direct causal link between the policy and the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Vissage v. City of Reno*, No. 5:07-cv-00118-CMC, 2007 WL 3326591, at *3 (E.D. Tex. Nov. 6, 2007). The policy must be the "moving force" behind the violations. *Monell*, 436 U.S. at 389.

A single incident of a violation "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997). For liability to attach, the failure to train must be closely related to the ultimate injury. *City of Canton*, 489 U.S. at 391. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389

## III.   ANALYSIS

Claims are brought against Harrison County under 42 U.S.C. § 1983 as well as various negligence claims and a vicarious liability claim. Dkt. No. 46 at 8–24. At issue is whether the § 1983 pleadings are sufficient to support liability under *Monell* and whether the negligence claims and vicarious liability claim are barred by governmental immunity. *See* Dkt. No. 48 at 8–27.

### a.  Pleading Standard

Doe argues that Federal Rule of Civil Procedure 9(b) does not apply to § 1983 claims. Dkt. No. 51 at 9 (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163 (1993)). Harrison County has not asserted Rule 9(b) regarding pleading

requirements, but rather Rule 8(a)(2), which requires that the pleading contain a plain statement of the claim showing that the pleader is entitled to relief. Dkt. No. 48 at 3 (citing Fed. R. Civ. P. 8(a)(2)).

To impose liability under § 1983, a plaintiff must allege "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Vissage*, 2007 WL 3326591, at *4 (citing *Monell*, 436 U.S. at 694, 98). With respect to the failure to train claim, a municipality's failure must evidence "deliberate indifference" to the rights of its inhabitants. *City of Canton*, 489 U.S. at 389.

### b. County Liability Arising from Underlying Fourth Amendment Violation for Sexual Assault

If there is no underlying constitutional violation, there is no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Harrison County's Motion states, "[f]or the purpose of this motion only, Defendant will assume that the allegations of sexual assault of Plaintiff by Defendant Valentine, if taken as true, sufficiently allege a constitutional violation cognizable under 42 U.S.C. §1983." Dkt. No. 48 at 2. Accordingly, for the purpose of this motion, the Court will assume the same.

### c. Hiring & Transport Policies

"Plaintiff identifies and pleads two specific policies by which Plaintiff's rights were deprived: 1) the hiring policy (Amended Complaint at ¶28, First Cause of Action) and 2) the transport policy (Amended Complaint at ¶37, Second Cause of Action)." Dkt. No. 51 at 11. County liability under § 1983 requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

Doe asserts in the Second Amended Complaint, "the Harrison County Sheriff was the County's final policymaker regarding the conduct of its deputies and had actual or constructive knowledge of the inadequate supervision and training that, in reasonable probability, caused the incidents that forms the basis of this lawsuit." Dkt. No. 46 at 11. Harrison County's Motion does not dispute that the Harrison County Sheriff is the final policymaker, but rather argues that Doe fails to plead specific facts sufficient to infer deliberate indifference on the part of the Harrison County Sheriff, such as that the allegations are deficient to show that the Harrison County Sheriff knew about Valentine's familial relationship to McGlothin or knew of widespread conduct that would be policy by custom. Dkt. No. 48 at 3, 6.

### 1. Hiring Policy

Count 1 of the Second Amended Complaint is headed "42 U.S.C. §1983 – VIOLATION OF HIRING POLICY - FAILURE TO CONDUCT BACKGROUND CHECKS." Dkt. No. 46 at 8. Doe pleads that Harrison County had a policy requiring job applicants to undergo a thorough background check and that Harrison County failed to follow this policy. *Id.* Doe argues in the Second Amended Complaint that had Harrison County followed this policy it would have discovered that Valentine has a history of sexual assault and/or harassment, been previously terminated by other law enforcement departments for inappropriate behavior and did not meet Harrison County's hiring criterion. *Id.*

The Second Amended Complaint then reads, "[s]uch policy specifically excluded making inquiries with prior Sheriff's offices where officers applying for employment were previously employed." *Id.* Doe pleads that "Valentine was retained despite and with knowledge of his past misconduct" due to Valentine's familial relationship with McGlothin. *Id.* at 9. Doe continues, "Harrison County failed to provide the appropriate hiring policy to employees of Harrison County

8

Jail that would have alerted its employees not to release Plaintiff, and the other women harmed by Defendant Valentine, to a single, male officer, specifically, Officer Valentine . . . ." *Id.* Doe alleges that this "failure and/or application" of Harrison County's hiring policy was a moving force of the constitutional deprivations which led to Doe's sexual assault. *Id.*

Harrison County asserts that "only people can follow or not follow a policy, entities cannot, and there is no allegation that the Sheriff failed to follow the policy . . . ." Dkt. No. 48 at 8. Harrison County also argues that this allegation is inconsistent: Doe alleges that there was a policy that required thorough background checks that was not followed and yet pleads that there was a policy that specifically excluded checking with prior Sheriff's offices. *Id.* at 9. Harrison County then says that "making inconsistent allegations as an alternative argument for establishing policy establishes quite clearly that Plaintiff does not actually know what the actual policy is, or if there is one, which raises the possibility that she is spinning up allegations out of thin air." *Id.* at 10.

Doe responds that "Defendant quite accurately states that Plaintiff 'does not actually know what the actual policy is, or if there is one'" but that this is not Doe spinning allegations out of thin air but rather the result of Harrison County "purposefully obfuscat[ing] its own policies or customs to avoid liability." Dkt. No. 51 at 12. Doe then argues that regardless, "in the absence of the ability to review all written policies and depose individuals with knowledge of same, Plaintiff does allege and adequately plead that a widespread practice or custom developed such that it became policy." *Id.* at 13.

The Court notes that Doe's Second Amended Complaint does not allege a written hiring policy. The Court reads the Second Amended Complaint as making two alternative arguments: (1) that there was a policy of thorough background checks that Harrison County violated, and (2) there

was a policy that Harrison County follows that specifically excluded checking with prior Sheriff's offices when hiring employees.

County liability under § 1983 requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694. If there was a policy of thorough background checks that Harrison County violated, then the policy of thorough background checks could not be the moving force behind the violation of the constitutional right as said policy was violated. If there was a policy that specifically excluded checking with prior Sheriff's offices when hiring employees, promulgated by the Harrison County Sheriff, and that policy was the moving force behind the violation of constitutional rights, there may be liability.

Regarding the requirement of a policy promulgated by a final policymaker, Doe's Second Amended Complaint does not explicitly allege that the Harrison County Sheriff promulgated a policy of excluding checking with prior Sheriff's offices when hiring employees. However, the Second Amended Complaint alleges that "[t]his policy was connected to Harrison County itself, as it was official county policy and not the policy of an individual." Dkt. No. 46 at 6. Combined with the allegation that "[d]uring all relevant times, the Harrison County Sheriff was the County's final policymaker regarding the conduct of its deputies," it can be directly inferred that the Second Amended Complaint pleads that the Harrison County Sheriff promulgated the "official county policy" as "the County's final policymaker." *See* Dkt. No. 46 at 11.

Regarding whether the alleged policy of excluding checking with prior Sheriff's offices when hiring employees, promulgated by the Harrison County Sheriff, was the "moving force" behind the violation of the constitutional right, Doe's Second Amended Complaint pleads that "[t]he constitutional violations in this case were the direct result of the applicable [sic] and/or

misapplication of Harrison County's own hiring policies." *Id.* at 9. Doe's Second Amended Complaint alleges that "Valentine was under investigation from at least one other instance of sexual misconduct when he resigned" and that "[a]ccording to records obtained from Gregg County Jail, supervisors were investigating claims from at least one female employee that Roger "Chilly" Valentine, 53, asked her to touch his groin area "inappropriately and without her consent" and that he grabbed her buttocks in February 2013 while on a jail elevator." *Id.* at 4.

Doe's Second Amended Complaint argues the constitutional violations were the direct result of Harrison County's hiring policy, since with an appropriate hiring policy "Harrison County Jail [] would have alerted its employees not to release Plaintiff, and the other women harmed by Defendant Valentine, to a single, male officer, specifically, Officer Valentine, especially during transports of significant length and duration, on a recurring basis for nearly a year." Dkt. No. 46 at 9. Had Harrison County Jail alerted its employees not to release Doe to Valentine, the alleged constitutional violation could not have occurred. Accordingly, this is a sufficient pleading of this element of the claim.

Harrison County argues that there is no specific allegation that anyone at Harrison County was aware of the Gregg County investigation. Dkt. No. 48 at 13. Doe's alternative argument is that Harrison County's hiring policy, which specifically excluded making inquiries with prior Sheriffs' offices where officers applying for employment were previously employed, was the moving force behind the underlying assumed constitutional violation precisely because it resulted in Harrison County not being aware of the Gregg County investigation and accordingly resulted in Harrison County Jail not alerting its employees to not release Doe to Valentine.

Doe's Second Amended Complaint pleads, "Defendant knew or reasonably should have known of Valentine's conduct and/or that Valentine was an unfit employee, agent, and/or

representative because of his prior misconduct. Defendant further knew or should have known of Valentine's misconduct, including his sexually assaulting and/or sexually harassing behavior." Dkt. No. 46 at 16. More directly, Doe's Second Amended Complaint alleges, "Defendants knew or should have known that Valentine posed a risk of harm to Plaintiff or those in Plaintiff's situation." *Id.* at 18.

Harrison County argues regarding the alleged policy that "even if . . . presumed true, this alone would not be sufficient to establish liability on Defendant Harrison County. The courts do not require any particular employment screening to pass constitutional muster." Dkt. No. 48 at 11 (citing *Hardeman v. Kerr County*, 244 Fed. Appx. 593 (5th Cir. 2007)(per curium)). Harrison County then proceeds to discuss *Hardeman v. Kerr County*, which regarded county liability for the rape of a jail inmate based on failure to screen the jailer, who had been fired from a job as an officer at a school district for improper advances toward female high school students. *Id.* The court there found that Kerr County had not been deliberately indifferent in hiring the jailer, stating "[w]hile the grounds for his discharge from Harlandale ISD were troubling, especially in retrospect, it requires an enormous leap to connect 'improper advances' towards female students to the sexual assault at issue here." *Hardeman*, 244 Fed. Appx. at 596.

Doe distinguishes *Hardeman* from the present matter, as "the Hardeman case Defendant cites was decided upon summary judgment. It is worth noting that discovery was allowed – and necessary – to even give rise to allegations in the Hardeman case, and the Court necessarily applied a different standard of review than the standard applicable to a Motion to Dismiss." Dkt. No. 51 at 16. The Court finds that Doe has adequately pleaded this claim.

Harrison County also argues that "whether it is a formal or a de facto policy, the policymaker must have adopted the policy with deliberate indifference." Dkt. No. 48 at 16. The Court in *Board of County Cm'rs of Bryan County, Okl.* said:

> Predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is far more difficult.[1] Only where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Board of County Cm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997). However, this opinion regarded an appeal from a judgment on jury verdict. Harrison County's motion is a pleadings motion. Under the standards of a motion to dismiss, Doe has adequately pleaded facts that, if true, could lead a reasonable jury to find that the inadequacy of the hiring policy is "obvious and obviously likely to result in a constitutional violation" sufficient to meet deliberate indifference.

## 2. Transport Policy

Count 2 of the Second Amended Complaint is headed, "VIOLATION OF TRANSPORT POLICY." Dkt. No. 46 at 10. Doe alleges Harrison County's inmate transfer policy "specifically excluded requiring at least one (1) female officer and/or two (2) officers be present at all times during the transport of a female inmate to prevent instances of sexual assault such as that occurred in this case." *Id.* As with the hiring policy, Doe pleads, "[t]his policy was connected to Harrison County itself, as it was official county policy of the Sheriff's office and not the policy of a single individual." *Id.* As previously stated, Doe alleges "the Harrison County Sheriff was the County's

---

[1] Predicting hiring consequences is more difficult compared to predictability of consequences of failure to train. *See Board of County Cm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997).

final policymaker regarding the conduct of its deputies . . . ." *Id.* at 11. Further, Doe pleads that Valentine made "special arrangements" with the other officers and supervisors "so that he would be the sole transporting officer of female inmates during lengthy transports. Defendant Harrison County via Defendant Valentine's direct supervisor knew or should have known of Valentine's transport assignments including . . . any alterations in a scheduled transport." *Id.*

Harrison County argues that "the fatal flaw in this claim is that there is no allegation to establish that the Sheriff or anyone else should have known of the need for such staffing. . . . [t]herefore, Plaintiff has not alleged deliberate indifference . . . ." Dkt. No. 48 at 18. Harrison County further argues that although Doe alleges Valentine's "special arrangement," Doe "offers no facts to support this assertion; there are no specific allegations of other females that were transported by Valentine, or who they were or when the transports allegedly occurred." *Id.* Harrison County adds, "for the purpose of liability, there is no allegation that, in six years of employment, any other female inmate ever complained of a sexual assault or any other type of misconduct during transport, by Defendant Valentine or any other officer." *Id.* Harrison County further adds, "there is no allegation that the Sheriff knew about the alleged 'arrangement'." *Id.*

Harrison County argues, in essence, that there is no alleged deliberate indifference because the Harrison County Sheriff, the policymaker, did not know of the need for the staffing arrangement since (1) there are no allegations of other complaints, and (2) the Harrison County Sheriff was not aware of Valentine's alleged "special arrangement." Doe argues that "Defendant Harrison County's official policy, if none other exist, is insufficient and demonstrates lack of protection for female inmates" and accordingly as a result "Defendant Harrison County defaulted to a persistent, widespread practice of transporting female inmates however the jailer/peace officer saw fit, without oversight or protection." Dkt. No. 51 at 12.

14

Official policy is either an officially adopted policy or a widespread practice so common as to constitute a custom that fairly represents municipal policy. *Bennett*, 735 F.2d at 862. Doe argues that there is an official policy resulting from the widespread practice of "transporting female inmates however the jailer/peace officer s[ees] fit, without oversight or protection." *See* Dkt. No. 51 at 12. As alleged in the Second Amended Complaint, such policy "specifically exclude[s] requiring at least one (1) female officer and/or two (2) officers be present at all times during the transport of a female inmate to prevent instances of sexual assault such as occurred in this case." Dkt. No. 46 at 10.

County liability under § 1983 requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694. Doe alleges "the Harrison County Sheriff was the County's final policymaker regarding the conduct of its deputies . . . ." Dkt. No. 46 at 11. Accordingly, for purposes of a motion to dismiss, Doe has sufficiently pleaded an official policy that excludes requiring at least one female officer or two male officers be present at all times during the transport of a female inmate to prevent instances of sexual assault, and pleaded that the policy was promulgated by the Harrison County Sheriff. Doe also alleges "The above-described violation of the transport policy . . . was a direct cause, and moving force, of the constitutional deprivations suffered by Plaintiff, which led to her sexual assault." Dkt. No. 46 at 12. Accordingly, so long as this policy was alleged to have been established with "deliberate indifference," Doe has sufficiently pleaded this count as well.

Doe argues "Defendant was at the very least deliberately indifferent in refusing to adopt appropriate sexual abuse preventative policies, including . . . clear transport policies." Dkt. No. 51 at 14. While the Second Amended Complaint does not explicitly allege that the Harrison County Sheriff was "deliberately indifferent" in adopting its transport policies, the Second Amended

Complaint does allege that "Harrison County purposefully or recklessly ignored Defendant Valentine's pattern as the sole, male transport officer for female inmates." Dkt. No. 46 at 11. The Second Amended Complaint also alleges "common national jail standards require[e] at least two officers during any transport of inmates . . . ." *Id.* at 7. The Court finds that a reasonable jury could find that the inadequacy of transport policy "obvious and obviously likely to result in a constitutional violation" sufficient to meet deliberate indifference.

### d.  Failure to Train and Supervise

Although not explicitly provided for as a § 1983 count, Count 7 is headed, "NEGLIGENT FAILURE TO TRAIN OR EDUCATE." Dkt. No. 46 at 19. Doe's Second Amended Complaint alleges, "Defendant failed to train or educate their members regarding the foreseeability and danger of sexual abuse by single transporting officers." *Id.* Doe also pleads, "Harrison County and the Sheriffs' Association of Texas failed to protect Plaintiff, and other female inmates, from the unwanted assault by Defendant Valentine or any of its employees by its failure to train or supervise the transport of female inmates to prevent incidents of sexual assault from occurring." *Id.* at 6.

Harrison County asserts that Doe has not pleaded facts from which the Court could infer actual or constructive knowledge or even an example of a violation of a prisoner's constitutional rights that would have given the Sheriff reason to think training and supervision were inadequate. Dkt. No. 48 at 20. Harrison County argues that to establish a governmental policy or custom under § 1983 a plaintiff must at least show a pattern of similar incidents and demonstrate her injury resulted from a "permanent and well settled" practice. *Id.* at 21. Further, Harrison County asserts that Doe has not shown any knowledge of the Harrison County Sheriff, falling short of showing deliberate indifference. *Id.* at 25.

16

Doe responds that the law provides for "occasions where it is obvious to the municipality that additional training is needed." Dkt. No. 51 at 21 (citing *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 972 (5th Cir.1992) (explaining that a municipality acts with deliberate indifference if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need") (quoting *City of Canton*, 489 U.S. at 390)). Doe argues that "it is clear there was a need for more and/or different training for employees of Defendant on hiring practices and/or transport policies." *Id.* at 22. Doe asserts that "Defendant's policymakers made no effort to ensure that its employees were adhering to national jail standards which were put in place to try and prevent assault in a prison or jail context." *Id.* (citing Dkt. No. 46 at 6–7; 24).

Regarding Harrison County's argument that a plaintiff must show a pattern of similar incidents, Doe argues that the Fifth Circuit has held that "§ 1983 liability can attach § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." Dkt. No. 51 at 22 (quoting *Brown v. Bryan County*, *OK*, 219 F.3d 450, 460 (5th Cir.2000)) ("we think it is clear from the [Supreme] Court's decisions in [*City of Canton*] and [*Board of County Commissioners of Bryan County, OK. v. Brown*, 520 U.S. 397 (1997)] that under certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations.").

Doe has sufficiently pleaded, for purposes of a claim under §1983, that there is a policy of not training or educating law enforcement officers "regarding the foreseeability and danger of sexual abuse by single transporting officers." *See* Dkt. No. 46 at 19. Doe has also alleged, "the

Harrison County Sheriff was the County's final policymaker regarding the conduct of its deputies and had actual or constructive knowledge of the inadequate supervision and training that, in reasonable probability, caused the incidents that forms the basis of this lawsuit." *Id.* at 11.

### e.  Governmental Immunity

Harrison County addresses Counts 5–9[2] and Count 11 as "a variety of negligence claims that are presumably founded on state law" and Claim 10, "a vicarious liability claim" together. Dkt. No. 48 at 25. Harrison County argues that these allegations fail to state a claim because they are barred by governmental immunity. *Id.*

Harrison County is a political subdivision of the State of Texas. Harrison County argues that "in Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). Harrison County further argues that "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Id.* (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

In *Tex. Dep't of Parks & Wildlife*, the Texas Supreme Court continued:

> The Texas Tort Claims Act provides a limited waiver of sovereign immunity. Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction. The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." Thus, the Department is immune from suit unless the Tort Claims Act expressly waives immunity.

*Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 224.

---

[2] This includes any state law claims in Count 7, which regards failure to train and supervise.

To the extent Doe's non-federal claims are based on the allegation of sexual assault, Harrison County argues that the Tort Claims Act's waiver does not extend to the present matter as it does not extend to suits for intentional torts. Dkt. No. 48 at 26 (citing § 101.057 (Vernon 1997); *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580, (Tex. 2001); *City of Waco v. Williams*, 209 S.W.3d 216, 2006 Tex. App. LEXIS 9531 (Tex. App. Waco Oct. 30, 2006, no pet.) (no waiver of immunity for assault claims); and *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.--Houston [1st Dist.] 1995, no writ) (false arrest and malicious prosecution)).

Harrison County continues, asserting that Doe's "negligence claims seem to be based on negligent use or non-use of information" and that "Plaintiff generally argues that, given what should have been known, certain steps should have been taken to protect Plaintiff. Claims about use of information, failure to use information or negligent use of information are not within the limited waiver of the Tort Claims Act." Dkt. No. 48 at 27 (citing *University of Tex. Medical Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (holding that information is intangible and that the Tort Claims Act did not waive immunity for negligence involving the use, misuse or non-use of information). The Supreme Court of Texas in that case said, "[w]e hold that information . . . does not constitute tangible personal property under section 101.021(2) of the Texas Tort Claims Act and that the State has not waived governmental immunity for negligence involving the use, misuse, or nonuse of information in a patient's medical records." *University of Tex. Medical Branch*, 871 S.W.2d at 179.

Doe responds that "the law is clear that Plaintiff's claims arise out of Defendant's violations of Plaintiff's constitutional rights and all of Plaintiff's claims survive Defendant's assertion of sovereign immunity," supporting that assertion by quoting the Texas Supreme Court in *Thomas v. Allen*: "a state court c[an] not refuse to entertain a § 1983 claim on the ground that it [is] barred by

the defense of sovereign immunity." Dkt. No. 51 at 22 (citing *Thomas v. Allen*, 837 S.W.2d 631, 632 (Tex.1992)(citing *Howlett v. Rose*, 496 U.S. 356, (1990))). However, the claims currently at issue are not the § 1983 claims.

Doe also argues that § 101.106(e) does not foreclose "suits within a suit" that allege independent claims against individuals in the same suit that alleges claims against the government unit. Dkt. No. 51 at 23. The instant case does not have "suits within a suit" because there are no longer individuals as defendants. On December 17, 2019, claims against former defendant Valentine were severed from this action into a new action. Dkt. No. 42.

### f.  Unaddressed Counts

The Court notes that Count 3, "Unreasonable Seizure, Substantive Due Process, and Abuse of Power" and Court 4, "Violation of Bodily Integrity" each are listed as § 1983 counts and are addressed as "Against All Defendants" and are not addressed by Harrison County. Since these counts are not challenged by Harrison County's Motion and are not defended by Doe's response, the Court finds it improper to dismiss these counts against Harrison County on this Motion.

### IV.   CONCLUSION

After due consideration, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Harrison County's Motion. The Court finds that Counts 5-6 and 8-10 fail to state a claim against Harrison County that is not barred by governmental immunity and therefore **GRANTS** Harrison County's Motion with respect to those counts.  With respect to Count 7, any state law claim is dismissed but any claim under §1983 is not. With respect to all other counts, the Court finds that

Doe has sufficiently pleaded a plausible claim and therefore **DENIES** Harrison County's Motion with respect to the remaining counts.

     **SIGNED this 30th day of March, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE