**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:19-cv-00254-RSP |
| | § | |
| HARRISON COUNTY, TEXAS, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION

Before the Court is Defendant Harrison County, Texas' Motion for Summary Judgment.[1]

**Dkt. No. 89**. Defendant Harrison County moves the Court to grant summary judgment and dismiss Plaintiff Jane Doe's inadequate screening claim ("Count I"), inadequate transport policy claim ("Count II"), unreasonable physical seizure and due process violation claim ("Count III"), violation of bodily integrity claim ("Count IV"), failure to adequately train or supervise claim ("Count VII"), and a state law negligence claim ("Count XI").[2]

---

[1] Before the Court is also the Plaintiff's Objections to and Motion to Strike Defendants' Summary Judgment Evidence ("Plaintiff's Motion to Strike Evidence"), filed by Plaintiff Jane Doe. Dkt. No. 105. Plaintiff's Motion to Strike Evidence is **DENIED**. The Court will properly assess all relevant and admissible summary judgment evidence. Before the Court is also the Defendant's Motion to Strike and Objections to Plaintiff's Summary Judgment Evidence ("Defendant's Motion to Strike Evidence"), filed by Defendant Harrison County. Dkt. No. 121. The Court has reviewed the declarations and statements in support of Plaintiff's opposition and finds that these documents do not change the outcome herein. Since the declarations and statements do not change the Court's ruling, any failure is harmless as there is no prejudice in permitting these declarations and statements into the record. Fed. R. Civ. P. 37(c)(1). Defendant's Motion to Strike Evidence is **DENIED**.

[2] Defendant identifies arguments made by Plaintiff that appear to be directed to a conditions of confinement claim. At one point Plaintiff argues in her brief that the transport conditions, practices, rules, and restrictions amounted to punishment and resulted in a constitutional violation. Dkt. No. 104 at 37 (citing *Sims v. City of Jasper, Tex.*, 1:20-cv-00124, 2021 WL 2349350, at *9 (E.D. Tex. June 9, 2021)). Doe asserts the policy of placing female persons in custody with a single male officer, where the officer could turn off the dash camera from the road with no other monitoring device or safeguard to ensure the transport was completed in a safe and reasonable time frame, is a *de facto* custom or policy for transport that was constitutionally inadequate and the moving force behind Doe's rape. *Id.* This claim is subsumed by Count II.

1

## I.     BACKGROUND

On March 22, 2019, Plaintiff filed her Second Amended Complaint regarding an incident that occurred during Plaintiff's transportation from a state facility to the Harrison County Jail by former defendant Roger "Chilly" Valentine. Dkt. No. 46 at 1–2. Mr. Valentine allegedly sexually assaulted Doe while on duty during the transport between facilities. *Id.* On December 17, 2019, the claims against Mr. Valentine were severed from this action. Dkt. No. 42.

Doe originally asserted several claims under both federal and state law. Dkt. No. 46. In a previous Order, the Court dismissed the counts of negligent supervision, negligent failure to warn, negligent retention, negligent infliction of emotional distress, and vicarious liability. Dkt. No. 79 at 20. Only Count I, Count II, Count III, Count IV, Count VII, and Count XI remain.

## II.    LEGAL STANDARDS

### A.  Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute

about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Courts must refrain from making credibility determinations. *Choe v. Bank of America, N.A.*, 605 Fed. Appx. 316, 320 (5th Cir. 2015); *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). The nonmovant must identify specific evidence in the record and explain how that evidence supports their claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### B.  42 U.S.C. § 1983

A county is liable if it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). Section 1983 provides a federal cause of action against those who, under color of state law, deprive a United States citizen of "any rights, privileges, or immunities secured by the Constitution and laws." County liability under §

1983 requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Id*. at 694.

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). In the context of an inadequate screening claim, the decision to hire a specific individual can constitute an official policy. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) ("[T]he hiring decision must be made by a final policymaker—it's critical to distinguish between 'an exercise of policymaking authority and an exercise of delegated discretionary policy-implementing authority.'") (emphasis omitted).

Once the policy has been established, a plaintiff must show that a final policymaker promulgated the policy and "that there was 'a direct causal link' between the policy and the violation." *James*, 577 F.3d at 617 (quoting *Piotrowski*, 237 F.3d at 580). "Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation [would] most likely occur" and thus the moving force. *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *Piotrowski*, 237 F.3d at 579) (alteration in original).

However, "where an alleged policy is facially innocuous, establishing the requisite official knowledges necessitates that a plaintiff demonstrate that the policy was promulgated or implemented with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 225 (5th Cir. 2020) (citing *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)) (internal quotations

4

omitted). "Establishing deliberate indifference generally requires a 'pattern of similar violations.'" *Id*. (citing *Burge*, 336 F.3d at 370) (internal quotations omitted). But there is a narrow "single incident" exception. *See Alvarez*, 904 F.3d at 390. "For deliberate indifference to be based on a single incident, 'it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy.'" *Covington*, 812 Fed. Appx. at 225 (quoting *Alvarez*, 904 F.3d at 390). "Deliberate indifference exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000) (quotations omitted). "[A] plaintiff who brings a claim pursuant to this extremely narrow single incident exception must show (1) the hiring decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Edgewood Indep. Sch. Dist.*, 964 F.3d at 366 (internal quotations omitted).

### C.  Inadequate Training and Failure to Supervise

For an inadequate training claim, plaintiffs must establish (1) an inadequate training policy; (2) deliberate indifference in adopting the training policy; and (3) that the inadequate training policy directly caused the plaintiff's injury. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). Deliberate indifference in adopting the training policy is found when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

For failure to supervise, a plaintiff must show that "(1) the supervisor . . . failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation

of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998).

"Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987)). Generally, the plaintiff must demonstrate at least a pattern of similar violations. *Id.* (citing *Snyder*, 142 F.3d at 798). The inadequacy of training must be obvious and obviously likely to result in constitutional violation. *Id.* (citing *City of Canton*, 489 U.S. at 390 and *Snyder*, 142 F.3d at 799). The standard to impose municipal liability for a single incident is "extremely narrow" and requires proof "that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (emphasis in original).

### D.  Negligence

The elements of a negligence cause of action are duty, breach of that duty, and damages proximately caused by the breach of duty. *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995). The components of proximate cause are cause-in-fact and foreseeability. *Id.*; see also *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). These elements cannot be established by mere conjecture, guess, or speculation. *Boys Clubs*, 907 S.W.2d at 477 (citing *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980)).

The existence of a duty is a question of law for the Court to decide from the facts surrounding the occurrence in question. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.

1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Generally, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) (citing *Centeq*, 899 S.W.2d at 197; *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)).

The test for cause-in-fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without which the harm would not have occurred. *Boys Clubs*, 907 S.W.2d at 477 (quoting *Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)). "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible." *Id.* (citing *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex. 1968)). "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries.... [and] justify the conclusion that such injury was the natural and probable result thereof." *Id.* (quoting *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939)).

"Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Id.* at 478 (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985)). The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." *Id.* (quoting *Carey*, 124 S.W.2d at 849). "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Id.* (citing Restatement (Second) of Torts § 435(2) (1965)).

Negligent infliction of emotional distress is not a recognized cause of action under Texas law. *Texas Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 612 (Tex. 2002); *see also Duggan*

*v. Emerson Electric Company, et al*, Case No. 4:11-cv-00606-RAS-DDB, Dkt. No. 49 at 3 (E.D. Tex. Feb. 21, 2013).

### III.    ANALYSIS

#### A.  42 U.S.C. § 1983 Claims[3]

#### a.  Alleged Pleading Deficiencies

Harrison County argues that Count I and Count II have been deficiently pleaded because Plaintiff only alleges constitutional violations perpetrated by Mr. Valentine rather than violations due to Harrison County's policies. Dkt. No. 89 at 14. The Court previously analyzed and rejected this argument with respect to Count I in its order regarding Harrison County's Motion to Dismiss. Dkt. No. 79 at 9–11.

With respect to Count II, first, the Court considers this argument waived as it was not made in Harrison County's Motion to Dismiss. *See* Dkt. No. 48 at 17–19. Assuming *arguendo* such an argument has not been waived, the Second Amended Complaint sufficiently pleads a policy that was applied when it alleged:

> Defendant Harrison County had a policy applicable to the transfer of inmates. Such policy specifically excluded requiring at least one (1) female officer and/or two (2) officers be present at all times during the transport of a female inmate to prevent instances of sexual assault such as that occurred in this case. This policy was connected to Harrison County itself, as it was official county policy of the Sheriff's office and not the policy of a single individual. Plaintiff's

---

[3] Harrison County states, "[f]or the purposes of this motion for summary judgment, Harrison County will assume that Plaintiff suffered a constitutional violation at the hands of Mr. Valentine and limit its argument to the fact that it did not in fact adopt or maintain a custom, rule, or policy with objective deliberate indifference to Plaintiff's constitutional rights." Dkt. No. 89 at 13. In view of Harrison County's stipulation, the Court need not analyze whether Mr. Valentine's actions deprived the Plaintiff of any constitutional rights. Of course, Defendant's stipulation is just for purposes of summary judgment and does not limit the Defendant from advancing an argument at trial that Mr. Valentine's actions did not deprive the Plaintiff of constitutional rights. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If there is no underlying constitutional violation, there is no municipal liability."). Accordingly, the analysis reduces to the *Monell* test for county liability under § 1983 which requires (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694 (1978).

injury occurred due to the application or misapplication of this
specific policy.

Dkt. No. 46 at 6.

### b.  Hiring Policy[4]

Plaintiff argues that Harrison County has a "hiring policy which did not require background
or reference checks, and which relied on the approval and oversight of only one person (Captain
Palmer)." Dkt. No. 104 at 31. She further argues that "Harrison County's policies and customs
were adopted and maintained with objective deliberate indifference." *Id*. at 28.[5]

Harrison County disagrees and argues Plaintiff is unable to satisfy her burden to show
Harrison County was deliberately indifferent. Dkt. No. 89 at 15–17. Harrison County likens the
facts of this case to previous precedents which have found that the plaintiff failed to carry its
burden to show deliberate indifference and asserts that under these precedents the Plaintiff will
similarly be unable to show that a "plainly obvious consequence" of hiring Mr. Valentine would
be his sexual assault of Doe. *Id*. (citing *Brown*, 520 U.S. 397, 411 (1997); *Rivera v. Bonner*, 952
F.3d 560, 563 (5th Cir. 2017)). Defendant points to *Brown* and *Bonner* for these propositions. *Id*.

In *Brown* the Supreme Court held:

> A plaintiff must demonstrate that a municipal decision reflects
> **deliberate indifference** to the risk that a violation of a particular
> constitutional or statutory right will follow the decision. Only where
> adequate scrutiny of an applicant's background would lead a
> reasonable policymaker to conclude that the **plainly obvious
> consequence** of the decision to hire the applicant would be the
> deprivation of a third party's federally protected right can the
> official's failure to adequately scrutinize the applicant's background
> constitute "deliberate indifference."

---

[4] The parties do not appear to dispute that the Sheriff is the relevant policymaker for Harrison County. The Court's
analysis will therefore focus on the Sheriff's decision to hire Mr. Valentine. *See* Dkt. No. 118 at 6 ("[T]he Sheriff,
who had ultimate decision-making authority as to hiring and training Sheriff's Office employees.").
[5] In the Second Amended Complaint, Plaintiff alleged that "Defendant Harrison County had a policy and procedure
requiring all new job applicants, including Defendant Valentine, undergo a thorough background check." Dkt. No.
46 at 8.

*Brown*, 520 U.S. at 411 (emphasis added).

In *Bonner*, the plaintiff brought claims under § 1983 against a Sheriff and a jail administrator for allegedly deliberately indifferent actions in hiring, training, and supervising jail employees that resulted in the plaintiff being sexually assaulted by a jailer that had been previously arrested on two occasions when he was fifteen years old for indecency with a child by sexual contact. *Bonner*, 952 F.3d at 563. During the hiring process Hale County Sheriff David Mull and Hale County Jail Administrator A.J. Bonner became aware that Fierros, a jailer at the Hale County Jail, had been arrested on two occasions—once in Randall County and once in Potter County—for indecency with a child by sexual contact. *Id*. at 562–63. After learning about these arrests, Bonner called the Randall County district attorney's and probation offices and the Potter County district attorney's offices to inquire about the incident. *Id.* at 563. Bonner claimed no records of the arrests were found, the individuals he spoke with had no knowledge of the charges, and no convictions were shown. *Id.* Later, Fierros sexually assaulted the plaintiff during the booking process. *Id.*

The Fifth Circuit reasoned that "under the specific circumstances of this case, the connection between Fierros's prior arrests and the injury to Rivera is not strong enough to show that Appellees were deliberately indifferent in hiring him." *Id.* at 566. The Fifth Circuit stated "Fierros' prior arrests for indecency with a child by sexual contact 'may well have made him an extremely poor candidate' for a position as jailer" but that "Fierros's juvenile record provided no detail regarding the alleged offenses, and there was no evidence that Fierros was ever charged or convicted." *Id.* (quoting *Brown*, 520 U.S. at 414). The Fifth Circuit elaborated that "at the time of Fierros's arrests, the Texas crime of indecency with a child broadly prohibited all 'sexual contact' with 'a child younger than 17 years'" and that "Fierros was fifteen years old at that point . . . it is entirely possible that he was arrested simply for engaging in uncoerced sexual activity with another

minor . . . acts that would not necessarily evince an obvious risk that Fierros would engage in future sexual violence." *Id.* at 566–67. The Fifth Circuit concluded, "[b]ecause the information available to Appellees was vague and inconclusive, a jury could not find that a plainly obvious consequence of hiring Fierros was that he would sexually assault a detainee." *Id.* at 567.

Harrison County argues that the present case regarded information surrounding the sexual harassment allegations, like *Bonner* and *Brown*, is too vague and inconclusive, such that Mr. Valentine's alleged sexual assault of Doe is not a direct consequence of hiring Mr. Valentine. Dkt. No. 89 at 18. Harrison County contends that "Plaintiff has merely shown at most that the Harrison Sheriff's office's hiring personnel knew in 2013 of allegations of sexual harassment lodged against this applicant when he worked for the Gregg County Sheriff's office," which "did not result in any conclusions, discipline, an EEOC complaint, a civil lawsuit or a criminal proceeding." *Id.* at 17. Harrison County asserts that this is "especially true given that the Harrison County Sheriff's Office did not receive documentation related to an investigation into the allegations of sexual harassment against Mr. Valentine because the investigation was incomplete and non-criminal in nature." *Id.* at 18 (citing Dkt. No. 89-1 at 2–3). Harrison County asserts that it "would have taken an enormous leap for Harrison County to connect an unsubstantiated allegation of sexual harassment of a co-worker to sexual assault of an inmate." Dkt. No. 118 at 7. Harrison Country argues that the "leap" between this one incident of alleged harassment of a co-worker and the sexual assault in question is too great for there to be any liability between the Defendant's allegedly deficient hiring policy and the harm caused. *Id.*

Plaintiff's evidence that there was a policy to "not perform background checks," or that the Sheriff hired Mr. Valentine with deliberate indifference is plainly rebutted. *See* Dkt. No. 89-2 at 5–38. There is extensive documentation showing that Harrison County performed a background

investigation. *See id*. This background investigation was performed by Captain Palmer (deceased) and he reported directly to the Sheriff. Dkt. No. 118 at 6. First, the Court is not aware of any "single incident exception" cases where the final policymaker's decision itself was not the hiring practice that deviated from normal or was otherwise improper. In other words, the "single incident exception" does not apply to the final policymaker's hiring decision where that decision itself was consistent with prior hiring practices. The circumstances in this case, at best, indicate that Captain Palmer may have deviated from his otherwise normal hiring procedures, but there is no evidence to suggest the final policymaker deviated from normal protocol. In these circumstances, applying liability to a municipality would run afoul of the *Monell* standard. *Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee*.") (emphasis added) (citing *Canton*, 489 U.S. at 391-392). There was no indication that Captain Palmer had continuously performed poor performance checks, thus the final policymaker's decision to hire Mr. Valentine could not be deliberately indifferent. Under Plaintiff's theory Harrison County would be liable for the grossly negligent actions of Captain Palmer—however, doing so would impose *respondeat superior* liability.

Second, even assuming *arguendo* Captain Palmer's screening and Mr. Valentine's subsequent hiring was a deviation from normal hiring practices and liability could attach to Harrison County, there is insufficient evidence for a reasonable jury to conclude Harrison County promulgated a deliberately indifferent policy that caused Plaintiff's particular injuries. There is a strong argument that the scrutiny of Mr. Valentine's background was negligent. It is also likely that had the final policymaker known of all the details of Mr. Valentine's past he would not have

12

been hired. But that is not the standard. The question is whether a reasonable jury could conclude that a reasonable supervisor would know that the plainly obvious consequences of hiring Mr. Valentine would be the rape of an inmate. *See Gros*, 209 F.3d at 434. In view of Fifth Circuit precedent, there is still too great a gap between Mr. Valentine's background and Plaintiff's particular injuries.

Plaintiff has submitted numerous declarations and statements documenting Mr. Valentine's history of harassment and demeaning behavior. *See generally* Dkt. Nos. 104-3–104-9 (Declaration of Jailer Christi Collier Bostick ("Jailer Collier") (Dkt. No. 104-3), Declaration of Jailer Lexie Nicole Denton ("Jailer Barron") (Dkt. No. 104-4), Incident Report of Jailer Collier (Dkt. No. 104-5), Statement of Jailer Barron (Dkt. No. 104-6), Statement of Jailer Sarah Kirkland (Dkt. No. 104-7), Statement of Jailer Jessica Rumsey (Dkt. No. 104-8), and Statement of Ashley Martin (Dkt. No. 104-9). Plaintiff adduced declarations, incident reports, and statements regarding several incidents where Mr. Valentine made inappropriate sexual comments to coworkers (Dkt. No. 104-3 at 2–3; Dkt. No. 104-4 at 2; Dkt. No. 104-6 at 5; Dkt. No. 104-7 at 3; Dkt. No. 104-8 at 3; Dkt. No. 104-9 at 3), grabbed and spanked coworkers (Dkt. No. 104-3 at 2; Dkt. No. 104-4 at 2; Dkt. No. 104-6 at 5; Dkt. No. 104-6 at 7), bent over coworkers (Dkt. No. 104-3 at 3), and kept inappropriate photographs of coworkers (Dkt. No. 104-4 at 3). But the Fifth Circuit has indicated these incidents are still too attenuated for a reasonable jury to conclude that the "plainly obvious consequence" of hiring Mr. Valentine would be Doe's sexual assault. *Hardeman v. Kerr County*, 244 Fed. Appx. 593, 596 ("While the grounds for his discharge from Harlandale ISD were troubling, especially in retrospect, it requires an enormous leap to connect 'improper advances' towards female students to the sexual assault at issue here."); *Bonner*, 952 F.3d at 567 (prohibited sexual contact constitutes "acts that would not necessarily evince an obvious risk that [the

defendant] would engage in future sexual violence.").The Fifth Circuit has made clear the gap between the consequence of hiring an individual with a history of harassment, and a later sexual assault, is too great to support a finding of deliberate indifference. *Hardeman*, 244 Fed. Appx. at 596; *Brown*, 520 U.S. at 412; *Bonner*, 952 F.3d at 567. Here, the particular injury suffered is rape. Though it is not unreasonable to conclude that a sexual harasser ***may*** transgress to sexual assault, that is not the standard. *See Brown*, 520 U.S. at 412 ("A finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."). Accordingly, the Court **GRANTS** Harrison County's Motion with respect to Count I.

### c.  Transport Policy

Plaintiff alleges in Count II that Harrison County's inmate transfer policy "specifically excluded requiring at least one (1) female officer and/or two (2) officers be present at all times during the transport of a female inmate to prevent instances of sexual assault such as that occurred in this case." Dkt. No. 46 at 10. Plaintiff asserts that this policy directly led to the circumstances which allowed Plaintiff's injuries to occur. *Id.*

Harrison County argues that due to circumstantial, logistical, and financial constraints, Harrison County is unable to mandate that either a female officer or at least two officers must transport a female prisoner on every transport. Dkt. No. 89 at 19. Harrison County asserts it has highly specific policies and safeguards in place for when an officer transported an inmate of the opposite sex and that Mr. Valentine "clearly and blatantly violated them on the day of the incident." *Id.* Harrison County argues that in a small county, like Harrison County which has limited staffing,

14

limited resources, and no history of sexual relations or conduct between officers and inmates on prior transports, this is the only way to meet the Sheriff's Office's inmate transportation needs reasonably and adequately. *Id.*

Harrison County asserts "[t]here is a transport of prisoner policy in the Sheriff's Office Standard Operating Procedures Manual. This policy does not require that a transport officer must be of the opposite sex of the transported prisoner." *Id.* at 8, ¶ 22 (citations omitted). Harrison County's assertion continues:

> Sgt. Jones had other mandatory requirements in place. His transport officers, including Valentine, were trained on these, and knew them well. . . . All officers knew from repetitive training and reminders not to have sexual contact or relations with an arrestee or inmate, and that, even if consensual, it is a felony. . . . Jones also required that the transport officers leave their dash cam on during the whole trip.

*Id.*

Doe presents a factual dispute by objecting to Harrison County's assertion. Dkt. No. 104 at 18, ¶ 22. Doe argues that there is no provision in the Harrison County Operational Plans regarding transport, except regarding restraints. *Id.* (citing Dkt. No. 104-23 at HC00231). Doe contends that Harrison County has identified the single-page transport policy in place, which simply states that the officer shall "advise the communications operator the starting location and mileage of the Sheriff's vehicle before beginning transport and, the ending mileage when the transport is finished." *Id.* (quoting Dkt. No. 104-11 at HC00137). Doe claims there are no other written policies or procedures regarding how to transport persons in custody, who is allowed or qualified to do so, and whether a camera or any other safeguard is in place to ensure their arrival. *Id.* (citing Dkt. Nos. 104-11 and 104-23). Doe also contends that Harrison County has produced

15

no written policy on the dash cam procedure, or the transport procedure described above which Sheriff Fletcher described in his deposition. *Id.* (citing Dkt. No. 104-10 at 53:20–55:17, 56:3–9).

The Court finds that there is sufficient evidence to create a genuine issue of material fact as to whether Harrison County has a transport policy which had "no written requirements for transporting persons in custody alone, no warning against sexual contact, harassment, or assault of inmates, and no camera or other monitoring safeguards" which "provided no transport oversight whatsoever." *See id*. at 10.

The question that remains is whether the policy was created, with deliberate indifference, by the policy maker. Harrison County argues that the transport policies were reasonable under the circumstances and had resulted in no incidents of prior sexual misconduct or assault until this incident. Dkt. No. 118 at 12. Doe responds that Gregg County is also a small county and does not allow a single male officer to transport female persons in custody. Dkt. No. 104 at 17, ¶ 21 (citing Dkt. No. 104-3 at ¶ 17); *see* Dkt. No. 104 at 17–18, ¶ 21; Dkt. No. 89 at 19. Doe asserts that the Harrison County Jail Operational Plans provide that only women can search women "yet Harrison County implies it is a fiscal impossibility to train further additional deputies (again, no requirement they be women) for transport." Dkt. No. 104 at 17, ¶ 21 (citing Dkt. No. 104-23 at HC00226). Doe argues:

> Harrison County Sheriff's Office has failed to produce any documentation of financial train [sic] or budgetary restriction [sic] which show that is prevent from hiring and retaining female officers. Defendant produced no evidence that they sought to hire female deputies or offered any corroboration for these alleged efforts. Defendant should not simply be permitted to claim "it's hard to hire women" without any support.

*Id.* at 17–18. Plaintiff contends the Sheriff's office requested a budgetary addition of $28,000 for uniforms "to keep the guys' uniforms looking good," among other additions. *Id*. (citing Robin Y.

Richardson, *Harrison County Kicks Off Budget Hearings for New Fiscal Year*, The Marshall News Messenger (July 4, 2020, Updated Aug. 8, 2021), https://www.marshallnewsmessenger.com /news/harrison-county-kicks-off-budget-hearings-for-new-fiscal-year/article_b73bdadc-bd79-11e a-af20-bfc5741a960f.html).

Harrison County counters that Gregg County's population is over twice that of Harrison County. Dkt. No. 118 at 11 (citing United States Census Bureau, *QuickFacts Gregg County Texas* (last visited Sept. 29, 2021) https://www.census.gov/quickfacts /greggcountytexas; United States Census Bureau, *QuickFacts Harrison County Texas* (last visited Sept. 29, 2021) https://www.census.gov/quickfacts/harrisoncountytexas). Harrison County further argues that Plaintiff attempts to discredit Defendant's estimated budget increase of $571,380 per year to comply with Plaintiff's proposal by showing that the Sheriff's office requested $28,000 uniform expense in its most recent budget request. *Id.* at 11–12 (citing Dkt. No. 89-7 at 4–5). Defendant alleges this is merely a $7,000 increase from the previous budget. *Id*. Harrison County points out the total Harrison County Budget for deputy salaries for 2020–2021 is $2,062,331. Dkt. No. 89-7 at 5. The $571,380 estimate amounts to a 27.7% increase in the deputy salary budget. However, a policy that only requires two officers for transport of female inmates may not require as sizeable a budget increase as the County argues, because female inmates are a significantly smaller portion of the inmate population.

The Court finds that a reasonable jury may find that the transport policy was created with deliberate indifference to the safety of female inmates. Though Harrison County argues that such a cost is not feasible, a reasonable jury may question the cost estimate or weigh the financial burden against the safety cost to inmates of a policy that could endanger them. Accordingly, the Court therefore **DENIES** Harrison County's Motion with respect to Count II.

**d.  Failure to Train Personnel on Transport Policy or Supervise Personnel During Transport**

The Court partially dismissed Count VII, Negligent Failure to Train or Educate, under any state law claim but not as to a claim under 42 U.S.C. § 1983. Dkt. No. 79 at 16. Plaintiff alleges "Defendant failed to train or educate their members regarding the foreseeability and danger of sexual abuse by single transporting officers." Dkt. No. 46 at 19.

Harrison County argues that Plaintiff failed to demonstrate that any alleged failure to train was deliberately indifferent and that Plaintiff cannot demonstrate a pattern of inadequate training, as is generally required. Dkt. No. 89 at 21–22 (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010); *Bender v. Fenimore*, No. 4:12-cv-245-KPJ, 2016 WL 11480734, at *7 (E.D. Tex. Dec. 13, 2016); Dkt. Nos. 89-1, 89-2, 89-5–89-13). Harrison County asserts that Mr. Valentine received "myriad arrays of training and supervision for 5 years before the incident happened" and that each officer was required to meet state requirements established by the Texas Commission on Law Enforcement ("TCOLE")." *See* Dkt. No. 89 at 22. Harrison County argues meeting minimum state standards means there can be no liability unless the plaintiff shows "that this legal minimum of training was inadequate." *Sanders-Burns*, 594 F.3d at 381–82.

Doe responds that Harrison County implemented inadequate training and supervision policies with respect to sexual assault of inmates "which amounted to a *de facto* policy that inmates could consent to sexual activity with officers." Dkt. No. 104 at 10. Doe further asserts failure to train and educate can be proven under an episodic acts analysis. *Id.* at 11. Doe argues it can meet the burden of showing deliberate indifference to persons in custody. *Id.* at 34–35. Doe asserts there is no written policy or training materials that expressly inform jailors that inmates cannot provide consent to sexual activity, or otherwise expressly notify jailors that they are prohibited from

18

engaging in sexual activity with prisoners. *Id.* at 35. Doe argues there is a basis for its episodic acts or omissions claim of inadequate training and supervision.

Harrison County replies that the Plaintiff is misunderstanding a statement made by Sheriff Fletcher; namely that Sheriff Fletcher's statement that Mr. Valentine's encounter with Doe was consensual—as opposed to a forced/violent event—to mean that the Sheriff's Office has a *de facto* policy that inmates can consent to sex with a County officer or jailer. Dkt. No. 119 at 9–10 (citing Dkt. No. 104 at 31, 34). Harrison County further states the accusation that it maintained a *de facto* policy that inmates can consent to sex is without merit. The Court agrees.

The evidence Doe propounds to support its assertion that there is a *de facto* consent policy includes no mention of sex with inmates. *See* Dkt. No. 104 at 33; *see also* Dkt. Nos. 104-11–104-13. The only other statement Doe cites to support its assertion is reproduced below (deposition of Sheriff Fletcher):

> Q. (By Ms. Simpson) Is it Harrison County's position that an assault did not occur?
> A. It is -- it is my position that -- that it was consensual sex.  Uh, it is -- it is my position that -- that, uh, he -- he will have criminal charges to face for that.  Uh, I do not believe a sexual assault occurred, no.
> Q. Is it Harrison County's position that an inmate in custody who is shackled at the ankles has the ability to consent to sex with an officer?
> A. I -- I believe anybody can consent that – that wants to.  Uh, I feel that people that are incarcerated will sometimes do whatever it takes to get out and not be incarcerated any longer, and, uh, I think that's the case in this case.

Dkt. No. 104 at 34 (quoting Dkt. No. 104-10 at 145:17–146:5).

Here, Sheriff Fletcher's statement is not a statement of policy but rather a statement of his belief as to the facts surrounding this case. No reasonable juror could interpret this evidence as

evidence of a statement of policy regarding consensual sex between inmates and jailers. Furthermore, Sheriff Fletcher later clarifies his earlier statement:

> Q: Is it Harrison County's position that the sex between Roger Valentine and my client was consensual?
> A: Yes.
> Q: Is it Harrison County's position that there was no force used by Roger Valentine in having sex with my client?
> A: Yes.
> Q: Is it Harrison County's position that an assault did not occur on March 22nd, 2019?
> A: Yes
> Q: Is that position consistent with Texas law?
> A: Official oppression occurred, yes. Uh, he broke the law. Uh, he broke our policies, and -- and but, uh -- what was your -- what was your last question, Ms. -- Ms. Simpson?
>
> …
>
> Q: My question is: What is Harrison County's position on what force is?
> A: Force is unwanted contact.
> Q: So is it Harrison County's position that my client wanted the contact with Roger Valentine?
> A: Yes.

Dkt. No. 104-10 at 16–17 (157:3–18, 159:1–6). Despite stating the sexual contact was "consensual" Sheriff Fletcher still considered sexual contact with a prisoner to be categorically illegal. *Id*. Doe has not presented a genuine issue of material fact here. Accordingly, the Court **GRANTS** summary judgment in favor of Harrison County with respect to Count VII.

### B.  Count III and Count IV

Harrison County argues that Count III and Count IV fail to assert any adopted county policy or custom or widespread practice that caused Plaintiff's injury. Dkt. No. 89 at 20. Harrison County contends that accordingly, these claims against Harrison County fail as a matter of law under *Monell*. *Id.* (citing *Monell*, 436 U.S. at 691).

Doe responds that "Defendant appears to have misinterpreted the language regarding the constitutional violations of Plaintiff . . . . These constitutional violations are instead the results of Harrison County's violations . . . ." Dkt. No. 104 at 43. Doe thus argues that these constitutional violations are harms flowing from Harrison County's violations and demonstrate the link to Harrison County's inadequate policies and customs. *Id.*

The Court understands Doe's position that these are possible underlying constitutional violations that give rise to the § 1983 liability that is the subject of other causes of action. There is no independent cause of action that has not otherwise been pleaded or subsumed into Plaintiff's other causes of action. Accordingly, the Court **GRANTS** Harrison County's Motion with respect to Count III and Count IV. These violations themselves are simply not separate causes of action against Harrison County.

### C.  Count XI

Plaintiff alleges under "Count 11: State Law Claim – Negligence," which is asserted against all defendants, that "Defendant Harrison County should not have allowed its transport officer, Defendant Valentine, to be conducting lone transports as he did" and that "Harrison County violated national jail standards regarding the transport of female inmates by releasing Plaintiff to Defendant Valentine alone. Defendant Harrison County thus breached its duty to prevent Plaintiff from being assaulted and/or sexually assaulted." Dkt. No. 46 at 24.

Harrison County argues that the negligence claim under state law is not permitted by the Texas Torts Claims Act ("TTCA"). Dkt. No. 89 at 27–29. Harrison County contends that Doe's state law claims against Harrison County are based upon allegations of intentional conduct on the part of an employee, i.e., an intentional tort. *Id.* at 28.

If a plaintiff pleads facts which amount to an intentional tort, regardless of whether the claim is framed as negligence, the intentional tort claim is barred by the TTCA. *Id.* (citing *Pineda v. City of Houston*, 175 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Doe does not challenge Harrison County's argument in its response. Harrison County also argued in its motion to dismiss Doe's second amended complaint that Doe's "negligence claims seem to be based on negligent use or non-use of information" and that "Plaintiff generally argues that, given what should have been known, certain steps should have been taken to protect Plaintiff. Claims about use of information, failure to use information or negligent use of information are not within the limited waiver of the Tort Claims Act." Dkt. No. 48 at 27 (citing *University of Tex. Medical Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (holding that information is intangible and that the Tort Claims Act did not waive immunity for negligence involving the use, misuse, or non-use of information).

Accordingly, the Court **GRANTS** Harrison County's Motion with respect to Count XI as a claim for which liability against Harrison County cannot arise under the allegation that Mr. Valentine committed intentional torts against Doe.

## IV.    CONCLUSION

After due consideration, the Court **DENIES** Harrison County's Motion with respect to Count II. The Court **GRANTS** Harrison County's Motion with respect to all other counts.

**SIGNED this 3rd day of December, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE